IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

| Richard Deas #332943, | ) | |
|---|---|---|
| | ) | Civil Action No.: 5:19-cv-830-BHH-KDW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM IN SUPPORT OF |
| Wayne McCabe, Joseph Canning, | ) | MOTION FOR SUMMARY JUDGMENT |
| Associate Warden Ford, Major | ) | ON BEHALF OF DEFENDANTS |
| Smith, Benjamin Davis, Lieutenant | ) | |
| Danley, Sergeant Blackwell, Head | ) | |
| Nurse Robins and Christina Long, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The Pro Se Plaintiff brings this lawsuit as a civil rights action pursuant to 42 U.S.C. §1983. Plaintiff is an inmate in the South Carolina Department of Corrections (SCDC). At the time of the matters alleged in the Complaint, Plaintiff was housed at Kershaw Correctional (Kershaw); however, he is housed now at Broad River Correctional (Broad River). At the time of the matters alleged in the Complaint, Defendants were employed by and were acting within the scope of their employment with the SCDC.

Defendants Director Bragg, Sergeant Rhinehard, Officer Gadsden, Officer Ezil, and Sergeant Brown, were dismissed from the Complaint by Order dated August 28, 2019 (Document #71).

In his Complaint (Document #1), Plaintiff alleges that: since September 2018 while in administrative segregation/lockup, Defendants, Acting Warden Wayne McCabe,

1

Associate Warden Joseph Canning, Associate Warden Ford, Major Smith, Administrative Captain Benjamin Davis, and Lieutenant Danley, failed and/or refused to allow him to participate in daily outside recreation and exercise and/or meaningful inside recreation and exercise, and failed and/or refused to allow him daily fresh air and sunlight.

Plaintiff also makes allegations against Defendant Food Service Director Bragg; however, Defendant Director Bragg was dismissed from the case by Order dated August 28, 2019 (Document #71).

In his Amended Complaint (Document #19), Plaintiff alleges that:

(1) since September 2018 in the RHU (restrictive housing unit), Defendant Lieutenant Danley and Defendant Sergeant Blackwell forced him to live in an unsanitary environment by refusing to conduct routine showers, cell cleaning, laundry cleaning and haircuts and shaves;

(2) since September 2018, Defendant Administrative Captain Benjamin Davis, Defendant Lieutenant Danley and Defendant Sergeant Blackwell, subjected him to unreasonable searches by forcing him to be strip searched every time he entered and exited his cell;

(3) on or about October 13, 2018, Defendant Administrative Captain Benjamin Davis and Defendant Sergeant Blackwell (along with Defendants, Sergeant Rhinehard, Officer Gadsden, Officer Ezil, and Sergeant Brown, who were dismissed from the case by Order dated August 28, 2019 – Document #71), used excessive force against him and illegally took away his personal property (i.e. eyeglasses and tennis shoes) without just compensation;

2

(4) since September 2018, Defendant Head Nurse Robins delayed or denied him medical treatment; and

(5) since September 2018, Defendant Classification Christina Long wrongfully imprisoned him in administrative segregation.

I. **PLAINTIFF'S 42 U.S.C. §1983 CLAIMS AGAINST DEFENDANTS ARE BARRED, PURSUANT TO THEIR ELEVENTH AMENDMENT IMMUNITY.**

LAW

The Eleventh Amendment bars suits against a state by citizens of another state or a foreign country and bars suits against a state by citizens of that state. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89 (1984), cert. denied, 498 U.S. 850 (1990). This immunity from suit conferred on states by the Eleventh Amendment extends to suits against state agencies, such as the SCDC, and its employees. A suit against state officials in their official capacities is construed as being against the State itself and is barred by the Eleventh Amendment absent consent to suit or waiver of immunity. Id. at 98-100; see also Jensen v. Conrad, 570 F. Supp. 91, 97 (D.S.C. 1983), aff'd. 747 F.2d 185 (4th Cir. 1984), cert. denied, 470 U.S. 1050 (1985); Coffin v. S. C. Department of Social Services, 562 F. Supp. 579, 584 (D.S.C. 1983).

Although Congress may expressly abrogate a State's Eleventh Amendment immunity pursuant to its enforcement power under the Fourteenth Amendment, the Supreme Court has consistently held that neither a State agency nor a State official in his official capacity is a "person" for purposes of a §1983 damages action. Will v. Michigan Department of State Police, 109 S. Ct. 2304 (1989).

3

DISCUSSION

At the time of the matters alleged in the Complaint, Defendants were SCDC employees and were acting within the scope of their employment with the SCDC. Therefore, since Congress in enacting §1983 failed to waive the State's Eleventh Amendment immunity, any claims for damages under this section against Defendants in their official capacities, should be barred.

II.  **PLAINTIFF'S 42 U.S.C. §1983 CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES ARE BARRED, BECAUSE PLAINTIFF CANNOT SHOW THEY DEPRIVED HIM OF ANY RIGHTS OR PRIVILEGES UNDER THE CONSTITUTION OR FEDERAL LAW OR THAT THEY WERE DELIBERATELY INDIFFERENT TO HIS HEALTH OR SAFETY.**

While neither a State nor a State official in his official capacity is a "person" for purposes of a §1983 damages action, a State official may be sued for damages in his or her individual, as opposed to official, capacity under §1983 for intentional deprivation of constitutional rights under color of state law. Hafer v. Melo, 112 S. Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991). To state a claim under §1983, Plaintiff must show that Defendants deprived him of a right, privilege or immunity secured by the Constitution or Federal law and that in doing so Defendants acted under color of state law. Chiles v. Crooks, 708 F. Supp. 127, 129 (D.S.C. 1989); Gomez v. Toledo, 446 U.S. 635, 640 (1980); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). The Eighth Amendment is violated when Plaintiff shows he is incarcerated under conditions posing substantial risk of serious harm, and that Defendants were deliberately indifferent to Plaintiff's health and safety. Farmer v. Brennan, 511 U.S. 825 (1994).

4

A.  OUTSIDE RECREATION AND UNSANITARY ENVIRONMENT

LAW

In <u>Mitchell v. Rice</u>, 954 F.2d 187, 193 (4th Cir. 1992), the Fourth Circuit explained that "depriving inmates of all meaningful opportunities to exercise generally violates the Eighth Amendment prohibitions against cruel and unusual punishments." Exceptions may also be made under exigent circumstances that necessitate limitations on such rights. In <u>Mitchell</u> and subsequent cases, "the Fourth Circuit Court of Appeals declined to announce a bright-line rule as to how long the period of deprivation of out-of-cell exercise or recreation must be to violate the Eighth Amendment, nor has an actionable distinction been made between in-cell and out-of-cell exercise deprivations. Instead, a totality of the circumstances in a given case should be considered." <u>Ham v. Ozmint</u>, 2011 WL 1559225, *3 (D.S.C. 2011).

In <u>Surratt. V. Ozmint</u>, 2009 WL 3861135 (D.S.C. 2009), this Court also recognized that "[c]ourts have held that there is no need to provide opportunities for exercise outside of one's cell if a person is capable of performing exercise within his or her cell." 2009 WL 3861135, *6. The Court cited the case of <u>Thomas v. Ramos</u>, 130 F.3d 754 (7th Cir. 1997), in which the Seventh Circuit held that "no constitutional violation had occurred when inmate was confined to his cell without exercise for seventy days but could have conducted exercises such as push-ups, sit-ups, and jogging in place within his cell." <u>Id</u>.

Furthermore, to state an Eighth Amendment violation with respect to prison conditions, a prisoner must show: "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." <u>Williams v.

5

Griffin, 952 F.2d 820, 824 (4th Cir. 1991). Moreover, "to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions. ... If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993).

## DISCUSSION

In his Affidavit (Exhibit A), Defendant Associate Warden Kevin Ford, who is responsible for the day-to-day operations of Kershaw, explains that starting on September 27, 2018, Plaintiff was housed in the RHU at Kershaw, where his activities of daily living were structured. He was transferred to Broad River Correctional on August 20, 2019. During his time at Kershaw, like any other inmate in the RHU, if Plaintiff could show over time that his conduct improved and that he could follow prison rules and regulations and interact properly with other inmates, he could be considered for transfer to a different unit/dorm. Most inmates do not want to live in the RHU, because of the structure and restrictions.

While in the RHU, Plaintiff was locked in his cell and was required by agency policy to be in his cell 23 hours and 1 hour for recreation. Although Plaintiff was not allowed daily outside recreation and exercise, if he was not on restrictions and did not have any disciplinary infractions/charges, Plaintiff could come out of his cell 3-days per week to shower and could come out of his cell to use the law library, to go to visitation, to go to

sick call, and if he had an Order to Report, to go anywhere inside the prison or outside the prison, such as outside medical appointments or court hearings, all of which gave him access to fresh air and sunlight.

Plaintiff was capable of exercising within his cell, and he also got exercise, if he walked from his cell to other parts of his unit or other places in the prison and if he was transported outside of the prison. Each day, Plaintiff had some form of meaningful inside recreation and exercise in the RHU.

When staffing allowed, and if he was not on restrictions and did not have any disciplinary infractions/charges, during 3 days per week, Plaintiff could have showers and haircuts and shaves. Cells are cleaned by inmate workers or, if Plaintiff was not on restrictions and did not have any disciplinary infractions/charges, he could be given the supplies to clean his cell. Inmate workers collect uniforms and have them cleaned. When staffing allowed, and if he was not on restrictions and did not have any disciplinary infractions/charges, during 3 days per week, Plaintiff could clean his clothes. Plaintiff did <u>not</u> live in an unsanitary environment in the RHU.

In addition, Defendant Nurse Sherry Robbins was a staff nurse and head nurse during part of the time Plaintiff was housed in Kershaw. In her Affidavit (Exhibit C), she states that Plaintiff's medical records show he never complained to any nurses or doctors about any of the physical or mental problems, injuries and damages, that he alleges in his Complaint and Amended Complaint.

This evidence shows that <u>Defendants, Acting Warden Wayne McCabe, Associate Warden Joseph Canning, Associate Warden Ford, Major Smith, Administrative Captain</u>

7

Benjamin Davis, Lieutenant Danley and Sergeant Blackwell, did not deny Plaintiff meaningful opportunities to exercise or access to fresh air and sunlight and did not force Plaintiff to live in an unsanitary environment by refusing him showers, clean cells, laundry cleaning, haircuts and shaves. This evidence further shows that Plaintiff has not suffered any serious or significant physical or mental injury as a result of any of these alleged deprivations.

B.      STRIP SEARCH

LAW

In Whitley v. Albers, 475 U.S. 312 (1986) the Supreme Court stated that courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." The Court recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials. The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline."

DISCUSSION

Defendant Associate Warden Kevin Ford, who is responsible for the day-to-day operations of Kershaw, states in his Affidavit (Exhibit A) that for safety, to preserve internal order and discipline, and to maintain institutional security, the SCDC policy requires that each inmate in the RHU, including Plaintiff, is subject to a strip search every time he exits or enters his cell. This is not an unreasonable search.

If <u>Defendants, Administrative Captain Benjamin Davis, Lieutenant Danley and Sergeant Blackwell</u>, conducted strip searches on Plaintiff when he entered and exited his cell, the evidence shows they were following the SCDC policy and did not deprive Plaintiff of any rights. The evidence further shows that Plaintiff has not suffered any serious or significant physical or mental injury as a result of any strip searches (Exhibit C – Affidavit of Defendant Nurse Sherry Robbins).

C. <u>EXCESSIVE FORCE</u>

<u>LAW</u>

It is well-established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992). In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm," rather than in a good-faith effort to maintain or restore discipline. <u>Whitley v. Albers</u>, 475 U.S. 312, 320–21 (1986); *see also* <u>Wilkins v. Gaddy</u>, 559 U.S. 34 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "'[w]hen prison officials maliciously and sadistically use force to cause harm'. . . 'contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" <u>Wilkins</u>, 559 U.S. at 37 (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992)).

However, courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." Whitley, 475 U.S. at 321–22. The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. Id. The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." Id. at 322.

The Supreme Court has directed courts to balance several factors in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Whitley, 475 U.S. at 321.

The Eighth Amendment is violated when Plaintiff shows he is incarcerated under conditions posing substantial risk of serious harm, and that Defendants were deliberately indifferent to Plaintiff's health and safety. Farmer v. Brennan, 511 U.S. 825 (1994). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985). A Defendant acts recklessly by disregarding a substantial risk of danger that is either known to the Defendant or which

would be apparent to a reasonable person in the Defendant's position. Id. The test is a subjective one. Farmer v. Brennan, 511 U.S. 825 (1994). Nevertheless, mere negligence does not violate the Eighth Amendment. Estelle, supra, at 106.

## DISCUSSION

Attached as Exhibit A-1 is a copy of the MIN Report and 6 Incident Reports regarding use of force on Plaintiff, which occurred on Monday, October 8, 2018 (the date October 9 on some of the documents is incorrect). As Defendant Associate Warden Kevin Ford explains in his Affidavit (Exhibit A), according to these reports, 2 officers were escorting Plaintiff from the shower back to his cell, when Plaintiff tried to walk away from them. These officers called for assistance. Plaintiff refused directives and orders to go back in his cell. To assist Plaintiff back in his cell, Defendant Captain Benjamin Davis placed his hand on Plaintiff's elbow, at which time Plaintiff became combative and began to kick and hit the officers, including his elbow striking Defendant Captain Benjamin Davis in the chest. The officers then physically picked Plaintiff up and put him in his cell. Pursuant to SCDC policy, a nurse came to the cell to see if Plaintiff was injured; no injuries were reported or noted. The officers did not use any physical strikes or kicks or chemical agents, during this use of force.

Furthermore, while housed in the RHU, Plaintiff was not allowed personal items. The incident reports regarding the use of force on October 13, 2018, do not mention that any of Plaintiff's personal property was confiscated; however, if Plaintiff had personal property that was not allowed, it would have been confiscated, inventoried and placed in storage for Plaintiff to claim later – any contraband would be destroyed.

Because the evidence shows that <u>Defendants, Administrative Captain Benjamin Davis and Sergeant Blackwell</u>, did not apply force "maliciously and sadistically for the very purpose of causing harm", but used a very slight amount of force in a good-faith effort to maintain and restore discipline in the face of Plaintiff's combative and aggressive actions and refusal to follow directives and orders to go back in his cell, they did not violate Plaintiff's right to be free from cruel and unusual punishment. In addition, Defendants and the SCDC are not required to pay "just compensation" for the confiscation of any of Plaintiff's personal property, including illegal contraband.

D. <u>DELAY AND/OR DENIAL OF MEDICAL CARE</u>

<u>LAW</u>

Deliberate indifference to an inmate's serious illness or injury is actionable under 42 U.S.C. §1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976). Unless Plaintiff's medical needs were serious or life threatening, and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, Plaintiff may not prevail. <u>Estelle</u>, <u>supra</u>, at 104. To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. See <u>Rogers v. Evans</u>, 792 F.2d 1052, 1058 (5th Cir. 1986).

Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test. First, a plaintiff must

show that the injury was objectively serious. <u>Farmer</u>, 511 U.S. at 834. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008). Second, a plaintiff must also satisfy the subjective component - deliberate indifference. An [official] is deliberately indifferent only when he or she "knows of and disregards" the risk posed by the serious medical needs of the inmate. <u>Farmer</u>, 511 U.S. at 837. The Fourth Circuit has identified two aspects of an official's state of mind that must be shown to satisfy the subjective component. First, actual knowledge of the risk of harm to the inmate is required. <u>Iko</u>, 535 F.3d at 241. Second, the [official] "must also have 'recognized that his actions were insufficient' to mitigate the risk of harm to the inmate arising from his medical needs." <u>Iko</u>, 535 F.3d at 241.

Deliberate indifference is "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." <u>Farmer</u>, 511 U.S. at 835. It "lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." <u>Brice v. Va. Beach Corr. Ctr.</u>, 58 F.3d 101, 105 (4th Cir. 1995) (citing <u>Farmer</u>, 511 U.S. at 835, 114 S.Ct. 1970). Under this standard, mere "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not actionable absent exceptional circumstances. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985).

<u>DISCUSSION</u>

In her Affidavit (Exhibit C), Defendant Nurse Robbins describes the numerous ways

Plaintiff had access to medical care at Kershaw. She also states that Plaintiff's SCDC computer medical records from September 28, 2018, until September 25, 2019 (Exhibit C-1) show that after September 28, 2018, he did not have any medical encounters with any nurses or doctors, including her, and the numerous notes made by the mental health counselors from their encounters with Plaintiff show that Plaintiff did not make any medical complaints or request any medical treatment. The medical records further show that Plaintiff never complained to any nurses or doctors about any of the physical or mental problems, injuries and damages, that he alleges in his Complaint and Amended Complaint.

Because Plaintiff does not state the specific dates Defendant Nurse Robbins allegedly delayed or denied him medical care and the reasons why, and he does not state the specific medical problems he allegedly had during this time, there is no evidence to support Plaintiff's allegations that <u>Defendant Nurse Robbins</u> delayed or denied him medical care. Therefore, <u>Defendant Nurse Robbins</u> was not deliberately indifferent to Plaintiff's health or safety.

E.    <u>CLASSIFICATION/WRONGFUL IMPRISONMENT</u>

In her Affidavit (Exhibit B), Defendant Christine Long states that she was <u>not</u> responsible for and did <u>not</u> make any decisions about any inmate being placed in security detention/administrative segregation at the SCDC, and she did <u>not</u> make the decision to place Plaintiff in security detention/administrative segregation at Kershaw.

Therefore, because <u>Defendant Christine Long</u> did not place Plaintiff in administrative segregation at Kershaw, she did not "wrongfully imprison" him and did not deprive him of any rights or privileges under the Constitution or Federal law.

## III. EVEN ASSUMING THE CONDUCT OF DEFENDANTS IS DEEMED UNCONSTITUTIONAL, THEY ARE ENTITLED TO QUALIFIED IMMUNITY FROM ALL LIABILITY.

LAW

If the conduct of Defendants is deemed unconstitutional, these Defendants submit that they are entitled to qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800 (1982). The Supreme Court in Harlow established the standard, which the Court is to follow in determining whether a defendant is protected by this immunity:

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.
>
> Reliance on the objective reasonableness of an official's conduct is measured by reference to clearly established law, and should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.
>
> The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:
>
> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 116 S. Ct. 89 (1995).

15

In the case of S.P. v. City of Takoma Park, 134 F.3d 260 (4th Cir. 1998), the Court set forth the established law regarding the determination of qualified immunity for a governmental official. The Court noted that the Fourth Circuit requires the following three-step analysis: (1) identify the right allegedly violated, (2) decide whether that right was clearly established at the time of the alleged violation, and if so, (3) determine whether a reasonable person in the official's position would have known that his or her actions violated that right. Id.; see also Smith v. Reddy, 101 F.3d 351, 355 (4th Cir. 1996); Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). "If the right was not clearly established at the relevant time or if a reasonable officer might not have known that his or her conduct violated that right, the officer is entitled to immunity." Smith v. Reddy, 101 F.3d at 355.

The Fourth Circuit explained the determination of whether the right is clearly established by stating that:

> the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996) (citations omitted). The official must realize that under the circumstances and the information known to him at the time, his actions will violate the constitutional rights about which the individual is now complaining.

## DISCUSSION

The evidence and arguments contained herein show that Defendants did not violate any constitutional or statutory rights of Plaintiff, whether "clearly established" or

not, that their actions were reasonable, and that such reasonableness warrants the granting of qualified immunity on the claims presented by Plaintiff. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

Therefore, even if the Court finds that Defendants violated Plaintiff's constitutional rights, these Defendants submit that they are entitled to qualified immunity in that they acted in an objectively reasonable manner in all actions involving Plaintiff, in light of "clearly established statutory or constitutional rights of which a reasonable person should have known."

## CONCLUSION

Based upon the foregoing discussion, Defendants respectfully request that the Court grant their Motion for Summary Judgment and dismiss Plaintiff's causes of action with prejudice.

s/James E. Parham, Jr._____
James E. Parham, Jr.
Federal I.D. #2969
    Attorney for Defendants
Post Office Box 1576
Irmo, South Carolina 29063
803-749-8555
jparham@jparhamlaw.com

October 23, 2019

CERTIFICATE OF SERVICE

    I, James E. Parham, Jr., do hereby certify that on the 23rd day of October 2019, I mailed a copy of the foregoing Memorandum in Support of Motion for Summary Judgment on behalf of Defendants by depositing a copy of the same in the United States Post Office at Columbia, South Carolina, with proper postage affixed addressed to the following:

>Richard Deas #332943, <u>Pro</u> <u>Se</u>
>Broad River Correctional Institution – RHU RM 145
>4460 Broad River Road
>Columbia, South Carolina 29210

>s/James E. Parham, Jr._____
>James E. Parham, Jr.